IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD MORTON, et al., | No. C 06-2933 SI |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| VALLEY FARM TRANSPORT, INC., | |
| Defendant. / | |

On April 13, 2007, the Court heard argument on plaintiffs' motion for class certification. After consideration of the parties' arguments, and for the reasons set forth below, the Court GRANTS plaintiffs' motion.

**BACKGROUND**

Plaintiffs are two former Milk Tank Truck Drivers ("milk drivers") employed by defendant Valley Farm Transport, Inc ("Valley Farm"). Plaintiffs filed this action under the Fair Labor Standards Act, the California Labor Code, and the California Business and Professions Code, and seek to recover allegedly unpaid overtime and meal and rest period wages. Plaintiffs allege that Valley Farm required its milk drivers to work more than 40 hours each week, and refused to pay the drivers an overtime pay premium for the hours worked in excess of 40. Plaintiffs also allege that although milk drivers usually worked over 10 hours in a day, Valley Farm did not provide the drivers with meal or rest periods. Plaintiffs have brought suit on behalf of an opt-in collective class under the FLSA, and an opt-out class action under Rule 23(b)(3) for the California claims.

Defendant Valley Farm is a commercial trucking company based in Dixon, California. During

the relevant time period, Valley Farm's trucking operations consisted of two branches. Sanchez Decl. ¶ 4. One concentrated on the hauling of tomatoes, water, and grains, and its drivers were based in Dixon, California. *Id.* The other branch focused solely on the hauling of milk and dairy products, and was based in Petaluma, California. *Id.* This lawsuit involves the operations of the Petaluma branch. Defendant sold its Petaluma milk hauling operations in 2005.

Defendant's milk drivers were responsible for transporting milk from dairies and creameries to milk bottling and processing plants in Alameda, Solano, Sonoma and Humboldt counties. *Id.* ¶ 6; Morton Decl. ¶ 6. In addition to driving, milk drivers were responsible for detailed sampling and weighing of milk, as well as recording its temperature, pursuant to state standards. Defendant has submitted evidence that drivers were variously assigned one or more of approximately 30 different routes designated by Valley Farm, and that drivers' assignments changed during the relevant time period. Matlen Decl. ¶ 9; Nickum Decl. ¶¶ 10, 12. According to defendant, routes contained different numbers of stops, the expected duration of routes differed daily and seasonally, and drivers who drove routes designated as "Clover routes"[1] had additional duties and were selected among drivers for special attributes that each possessed. Nickum Decl. ¶¶ 12-13, 24; Matlen Decl. ¶¶ 10-13.

Defendant has submitted the declaration of David F. Nickum, the Vice President of Valley Farm. Nickum states that during the time Valley Farm operated the milk hauling business, the company paid a flat rate for each route. Nickum Decl. ¶ 4. Nickum describes the company's policy as follows:

> [A] particular driver who drove a particular route on a given day received a flat rate that was a product of the driver's hourly rate multiplied by a designated number of hours (greater than the number of hours thought necessary to complete the route under typical conditions). More specifically, the flat rate assigned to each route was established by driving the route and adding an additional 30 to 60 minutes beyond the time necessary to complete the route with the aim that a route driver would be compensated for more hours of work than it was anticipated to take to complete the duties under typical conditions. The flat rates assigned to each route were typically established by the dispatcher then employed at the Petaluma, California plant, the base of operations for the milk hauling business in that locale. . . . Notwithstanding the foregoing, and despite the use of the flat rate calculation as the presumed amount of time for each day's work, Valley Farm Transport paid an additional sum to drivers associated with delay times that were incurred by the driver in loading, unloading or waiting for processing at the plants

---

[1] Nickum states that the "procedures, protocols and even the comportment of drivers who were delivering or picking up loads of milk for facilities affiliated with the Clover Dairies were different and more stringent than the requirements established by other operators of other stops on other routes." Nickum Decl. ¶ 12.

United States District Court
For the Northern District of California

> involved in a given route. Valley Farm Transport had a consistent policy of paying such delay time in addition to the flat rate whenever requested by the drivers so long as the delay time could be validated. . . . Further, despite the flat rate, Valley Farm Transport also paid an additional sum of money at the driver's hourly rate when due to extraordinary traffic conditions, road closures or other events beyond the driver's control, the amount of time actually taken to complete a route exceeded the amount of time reflected in the flat rate.

*Id.*

## DISCUSSION

**I.  FLSA Claim**

Plaintiffs seek certification of a collective action for their claim under the FLSA for failure to pay overtime wages. Plaintiffs propose certification of the following opt-in class:

> All persons employed by Valley Farm Transport, Inc., at any time since May 1, 2003 as Milk Tank Truck Drivers who worked in excess of forty (40) hours in a workweek and were not paid overtime compensation for those excess hours.

Section 216(b) of the FLSA provides that one or more employees may bring a collective action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.) (internal citation and quotation omitted), *cert. denied*, 519 U.S. 982 (1996). Plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim of class-wide discrimination. *See id.* at 1097. "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (internal citation and quotation omitted).

Here, plaintiffs have submitted their own declarations, as well as the declarations of two other former milk drivers who have opted into this litigation.[2] All four individuals state that they regularly and consistently worked more than 40 hours per week, but that they were never paid any overtime premium for any of the hours over 40. *See* Morton Decl. ¶ 26; Sanchez Decl. ¶ 28; Hamilton Decl. ¶ 23;

---

[2] The Court overrules defendant's objections to plaintiffs' declarations. (Docket No. 28). The Court finds that plaintiffs establish that they have personal knowledge and a foundation for their statements, and that various challenged statements fall within an exception to the prohibition against hearsay.

3

Hutton Decl. ¶ 24. All four individuals also state that Valley Farm held periodic meetings where overtime was discussed by plant managers Randy Ellis and David Ramirez, and owner David Nickum, and that at each of these meetings, defendant stated that it would not pay overtime. *See* Morton Decl. ¶ 28; Sanchez Decl. ¶ 30; Hamilton Decl. ¶ 25; Hutton Decl. ¶ 26. Finally, each individual states,

> Based on my personal knowledge of Defendant's operations that I gained during my employment with Defendant, I know that none of the Milk Drivers received overtime pay premiums. As more thoroughly set out above, I spoke daily with other Milk Drivers during my tenure about our terms and conditions of employment. I also trained new Milk Drivers and educated them about the terms and conditions of employment Defendant established for Milk Drivers, as I knew them to be from my own experience, what I had learned from other Milk Drivers, and what Company managers had taught me: Defendant observed a common policy applicable to Milk Drivers of not paying overtime pay premiums.

Morton Decl. ¶ 29; Sanchez Decl. ¶ 29; Hamilton Decl. ¶ 24; Hutton Decl. ¶ 25.

Plaintiffs' declarations also describe the standardized job qualifications for the milk driver position, and describe the duties of a milk driver. *See*, *e.g.*, Morton Decl. ¶ 24 ("From my experience working on various delivery routes out of the Petaluma facility, my training of other drivers, and what Company supervisors, including plant managers Randy Ellis and David Ramirez, and owner David Nickum, told me, Milk Driver job duties and the method of performing them was uniform for all Milk Drivers. VALLEY FARM maintained Milk Driver duties and the method of performing them in a uniform manner to comply with state regulations and to enable any Milk Driver to service any route in the event of an absence.").

Defendant asserts that there are numerous individual issues that make certification inappropriate. Defendant emphasizes the facts that there were over 30 different routes that drivers could be assigned, that drivers earned different hourly rates, some drivers had additional responsibilities, and that drivers had different work schedules. However, as plaintiffs note, these differences do not mean that the milk drivers are not "similarly situated." The fact that defendant designed 30 different routes, and that drivers' assignments may have varied, does not have any bearing on whether defendant paid its milk drivers overtime pay. Instead, most of the individual issues identified by defendant would be relevant to determining each class members' damages.

Defendant also denies that it had a policy of denying overtime to milk drivers. However, these arguments go to the merits of plaintiffs' claims, and do not defeat certification. The Court concludes

4

that plaintiffs have met their burden under FLSA, and certifies the first cause of action as an opt-in class.

## II.     California Claims

Plaintiffs seek to certify the second through seventh causes of action, which are all state law claims, pursuant to Federal Rule of Civil Procedure 23(b)(3).  Plaintiffs seek certification of the following two opt-out sub-classes:

> a. All persons employed by the Valley Farm Transport, Inc. at any time since May 1, 2002 as Milk Tank Truck Drivers who worked in excess of forty (40) hours in a workweek and were not paid overtime compensation for those excess hours.
>
> b. All persons employed by Valley Farm Transport, Inc. at any time since May 1, 2002 as Milk Tank Truck Drivers and were not provided meal or rest periods as dictated by state law.

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). The Court must conduct a rigorous analysis to determine whether the Rule 23 requirements have been met.  *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982);  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  The decision to certify a class is committed to the discretion of the district court.  *See Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).  Under Rule 23(c), a court may maintain a class action as to particular issues only or divide a class into subclasses. *See* Fed. R. Civ. P. 23(c)(4).

### A.     Rule 23(a) requirements

A court may certify a class if the plaintiff demonstrates that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied. *See* Fed. R. Civ. P. 23; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Rule 23(a) requires that the following four factors must be met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims

5

or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). In short, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

Defendant does not dispute adequacy, and thus the Court does not address that factor. With respect to numerosity, plaintiffs have submitted documents showing that there are approximately 70 putative class members. *See* Rabinowitz Decl. Ex. A. The Court finds that joinder of 70 plaintiffs would be impracticable, and thus that plaintiffs have established numerosity. *See* 1 Newberg on Class Actions § 3.5 (4th Ed. 2004) ("[T]he difficulty in joining as few as 40 class members should raise the presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

Rule 23(a)(2)'s commonality requirement may be satisfied by "the alleged existence of common discriminatory practices." *Arnold v. United Artists Theatre Circuit, Inc*., 158 F.R.D. 439, 448 (N.D. Cal. 1994) (citation omitted). In the Ninth Circuit, the commonality requirement has been "construed permissively," and may be satisfied by either "shared legal issues with divergent factual predicates," or "a common core of salient facts coupled with disparate legal remedies." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1988). Indeed, the Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal." *Id.* at 1020.

Here, defendant effectively concedes that plaintiffs have met the commonality requirement of Rule 23(a)(2). *See* Opposition at 9:12-13 ("There are common questions but by no means do they predominate in litigating or resolving this dispute."). The Court finds that there are common questions, including whether drivers were paid overtime pay for any hours worked beyond 40 in a work week, and whether drivers were provided meal and rest breaks.

The commonality and typicality requirements of Rule 23(a) tend to merge. *See Falcon*, 457 U.S. at 157 n. 3. Typicality exists if the named plaintiffs' claims are "reasonably coextensive" with those of absent class members. *See Hanlon*, 150 F.3d at 1020. Typicality does not mean that the claims of class members must be identical or substantially identical. *See Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiff has submitted declarations of the two proposed class representatives and two class

members, alleging that they were all denied overtime pay, and meal and rest breaks. The differences highlighted by defendant – such as routes driven, days and hours worked, customers served – do not affect plaintiffs' claims in any meaningful way, and do not render the named plaintiffs atypical. *See Arnold*, 158 F.R.D. at 449 (holding that it is sufficient for plaintiffs' claims to "arise from the same remedial and legal theories" as the class claims).

### B.     Rule 23(b)

Once the four requirements of 23(a) have been met, the Court must determine whether the case meets any of the three requirements of Rule 23(b). Plaintiffs argue that this class should be certified under Rule 23(b)(3), which provides in pertinent part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Defendant concedes that there are numerous questions of law common to the class, and that "these relatively simple questions may well be answered uniformly and may apply to all drivers in the putative class." Opposition at 11-12.[3] Defendant also concedes that there are numerous common questions of fact,[4] but contends that individual fact issues predominate. Defendant argues that the principal individualized issue is determining the actual amount of time worked by each driver each day,

---

[3] Defendant identifies the follow common issues of law: "what are the statutory penalties for a missed meal, what are the statutory penalties for a missed break, what are the statutory requirements for overtime premium pay for work beyond the regular or straight time ceilings and what are the effects of the F.L.S.A. and federal transportation regulations on state law in conjunction with the legal standards relied upon and remedies sought by plaintiffs." *Id*. at 11:23-28.

[4] Defendant states that the common factual questions include: "whether Defendant had a uniform policy of denying overtime premium pay for all drivers and whether Defendant dictated uniform practices regarding meals and breaks by its drivers regardless of route, day, daily hours of the road, opportunity to take breaks, condition of a driver's load and other variables." *Id*. at 12:4-10.

7

and that because plaintiffs allege that the pay records are incomplete or inaccurate, *see* Complaint ¶¶ 43-45, this determination will be laborious and will involve reexamining each driver's route on each day worked. The Court is not persuaded that such determinations will predominate over the numerous common factual and legal issues in this case, and the Court further notes that determinations about hours worked are routine in class actions involving alleged denials of overtime pay and meal/rest periods.

The Court concludes that it is appropriate to certify plaintiffs' California claims pursuant to Rule 23(b)(3) because common issues of fact and law predominate over individual questions, and because a class action is a superior method of resolution. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,1234 (9th Cir. 1996). Plaintiffs' declarations state that no class members have expressed an interest in pursuing a separate, independent action, and that numerous putative class members have expressed an interest in participating in this case. *See* Rabinowitz Decl. ¶ 10; Morton Decl. ¶ 30; Sanchez Decl. ¶ 32; Hamilton Decl. ¶ 27; Hutton Decl. ¶ 28.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion for class certification. (Docket No. 15). The Court hereby ORDERS as follows:

1. Plaintiffs' First Cause of Action is certified as a Collective Action pursuant to 29 U.S.C. § 216(b), and the Class is defined as follows:

> All persons employed by Valley Farm Transport, Inc. at any time since May 1, 2003 as Milk Tank Truck Drivers who worked in excess of 40 hours in a work week and were not paid overtime compensation for those excess hours.

2. Plaintiffs' Second through Seventh Causes of Action are certified as a Class Action pursuant to Federal Rule of Civil Procedure 23(b)(3), with two Sub-Classes defined as follows:

> a. All persons employed by Valley Farm Transport, Inc. at any time since May 1, 2002 as Milk Tank Truck Drivers who worked in excess of 40 hours in a work week and were not paid overtime compensation for those excess hours.
>
> b. All persons employed by Valley Farm Transport, Inc. at any time since May 1, 2002 as Milk Tank Truck Drivers and were not provided mail or rest periods as dictated by state law.

3. Defendant is ordered to produce the names, addresses and telephone numbers of all

8

potential Class Members within 60 days of the filing date of this Order;

4. Named plaintiffs Donald Morton and Daniel Sanchez are certified as class representatives;

5. The law offices of Beeson, Tayer & Bodine, specifically Robert P. Bonsall and Jason Rabinowitz, are certified as class counsel; and

6. Plaintiffs are ordered to send the Court-approved Notice to all Class Members by U.S. First Class Mail within 30 days from receipt of the names, addresses and telephone numbers of all potential class members from defendant.

**IT IS SO ORDERED.**

Dated: April 13, 2007

SUSAN ILLSTON
United States District Judge